# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **NELSON SHIRLEY,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. A-20-CV-261-RP** |
| | § | |
| **FMC TECHNOLOGIES, INC.,** | § | |
| **TECHNIP FMC PLC, and** | § | |
| **TECHNIPFMC US HOLDINGS, INC.,** | § | |
| *Defendants* | § | |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Application to Confirm Arbitration Award, filed March 11, 2020 (Dkt. 1); Defendants' Response in Opposition to Plaintiff's Application to Confirm Arbitration Award and Motion to Vacate Arbitration Award, filed March 26, 2020 (Dkt. 7); Plaintiff's Response in Opposition to Defendants' Motion to Vacate Arbitration Award, filed April 16, 2020 (Dkt. 10); Defendants' Reply in Support of their Motion to Vacate Arbitration Award, filed April 27, 2020 (Dkt. 13); Defendants' Request for Hearing on Defendants' Motion to Vacate Arbitration Award, filed May 8, 2020 (Dkt. 14); and Plaintiff's Response to Defendants' Request for a Hearing on Defendants' Motion to Vacate Arbitration Award, filed May 12, 2020 (Dkt. 17).[1]

On August 28, 2020, the District Court referred the above motions and related filings to the undersigned Magistrate Judge for resolution and Report and Recommendation, pursuant to

---

[1] Because a hearing is not necessary to rule on the pending motion, the Court **DENIES** Defendants' Request for a Hearing (Dkt. 14).

28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local

Rules of the United States District Court for the Western District of Texas.

**I.   General Background**

**A.  Underlying Dispute**

Plaintiff Nelson Shirley, a Kansas citizen, previously owned and operated Control Systems

International, Inc. ("CSI"), which provides control and automation systems to the energy industry

for pipelines, fuel terminals, and water plants. Dkt. 1-2 at 4. On February 9, 2012, Plaintiff entered

into a Stock Purchase Agreement ("SPA" or "Agreement") with Defendants FMC Technologies,

Inc. ("FMC"), a Delaware corporation, and FMC Technologies Limited, a British company, to sell

his equity interest in CSI for $64,990,000. Dkt. 1-1 § 1.1. The SPA included the following

arbitration provision:

> In the event of any dispute or disagreement among any of the parties
> as to the interpretation of any provision of this Agreement or the
> performance of obligations hereunder, after good faith negotiation
> by the parties, any party may, by written notice to the other parties,
> demand arbitration of the matter, and such arbitration shall be
> administered by the Center for Public Resources Institute for
> Dispute Resolutions ("CPR") in accordance with its then prevailing
> Rules for Non-Administered Arbitration of Business Disputes, by
> an arbitrator or arbitrators as selected and described in Section
> 8.11(b).
>
> ***
>
> The decision of the arbitrator(s) shall be written, shall be in
> accordance with applicable law, including, without limitation, the
> United States Arbitration Act, 9 U.S.C. § I et. seq. (the "USAA"),
> and with this Agreement, and shall be supported by written findings
> of fact and conclusions of law which shall set forth the basis for such
> decision. The decision of the arbitrator(s) shall be final and not
> subject to judicial review and judgment thereon may be entered in
> any court of competent jurisdiction, and the parties shall be entitled
> to act in accordance with such decision.

*Id.* § 8.11 (a) ("Arbitration Clause").

Under the SPA, the parties agreed that FMC would withhold $10 million of the purchase price at closing for three years "as security for the payment of any and all amounts" FMC was entitled to be paid under the Agreement, including "Final Working Capital Adjustments" and "Indemnification." *Id.* § 1.3 ("Holdback").

The SPA also contained a Company Equity Purchase Price Adjustment provision, which provided that Plaintiff was required to submit a good faith estimate of CSI's working capital to Defendants three days before closing. *Id.* § 1.4(b). If the estimated working capital was a negative number, the SPA permitted the purchase price to be reduced by that amount. *Id.* § 1.4(c). Defendants were required to deliver to Plaintiff their calculation of actual working capital within 90 days of closing. *Id.* § 1.4(d). After receiving the actual working capital amount, Plaintiff had 30 days to review the amount and the company's books and records. *Id.* § 1.4(e). Plaintiff could give Defendants a written statement setting forth his objections to the actual working capital amount before the last day of the review period, and if he did,  the parties would have a 30-day Resolution Period to negotiate in good faith to resolve Plaintiff's objections. *Id.* § 1.4(d). If the parties failed to agree as to the Plaintiff's objections:

> then any amounts remaining in dispute ("Disputed Amounts") shall be submitted for resolution to Deloitte LLP or, if Deloitte LLP is unable to serve, Buyer and Seller shall mutually agree on an impartial nationally recognized firm of independent certified public accountants that has not been engaged by Buyer, Seller or Company as its primary audit firm during the two-year period preceding such selection (the "Independent Accountants").

*Id.* § 1.4(g).

On April 30, 2012, the parties closed on the Agreement when Defendants wired the initial payment to Plaintiff. Pursuant to Section 1.4, Plaintiff sent Defendants an estimate of CSI's working capital, and Defendants responded with their adjustments, which included a $489,792 reduction in the purchase price. Defendants argued that CSI should have recorded a $489,792

payment from British Petroleum as a liability instead of as revenue on its 2011 financial statements. On August 28, 2012, Plaintiff complained to Defendants that they had not provided Plaintiff with access to CSI's books and records, as required by Section 1.4(e), and objected to the working capital adjustment. Accordingly, under the SPA, the parties were to engage in a 30-day Resolution Period, and if they failed to resolve the matter within that time, they were to submit the matter to "Deloitte LLP," as provided in Section 1.4(g). The parties, however, failed to comply with this provision; instead, they engaged in a three-year negotiation, without invoking Section 1.4(g) or the general Arbitration Clause in Section 8.11. *See* Dkt. 7-5 at 2. Nevertheless, the parties did not settle the matter.

On April 30, 2015, FMC paid Plaintiff a portion of the Holdback amount, but withheld $489,792 as an alleged "working capital adjustment" under the SPA. Dkt. 1-2 at 5. Plaintiff alleges that FMC had no justification or authority under the SPA to make such a working capital adjustment and, therefore, violated the Agreement.

**B. Arbitration Proceeding**

On April 17, 2018, Plaintiff invoked the Arbitration Clause and filed an arbitration proceeding in the International Institute for Conflict Prevention and Resolution against FMC and its successors in interest, TechnipFMC PLC and TechnipFMC US Holdings, Inc. (collectively, "FMC" or "Defendants"). Plaintiff alleged that FMC breached the SPA by failing to pay him $489,792. Plaintiff seeks a declaratory judgment that FMC breached the SPA by failing to pay him the full purchase price. *See* Dkt. 1-2.

In response, Defendants filed a Motion to Dismiss the arbitration proceeding, arguing that the Arbitrator lacked jurisdiction to resolve the working capital dispute between the parties. Specifically, Defendants contend that Section 1.4(g) of the SPA requires such disputes to be

submitted to an independent accountant, instead of an arbitrator. The Arbitrator denied Defendants' Motion to Dismiss, finding that because FMC did not timely invoke the dispute process under Section 1.4(g), that process was mooted once FMC unilaterally withheld the money from Plaintiff three years after closing. Dkt. 7-5. Accordingly, the Arbitrator found that the general Arbitration Provision applied and he had jurisdiction over the dispute.

On March 10, 2020, the Arbitrator issued his Final Arbitration Award in favor of Plaintiff on both his breach of contract and declaratory judgment claims. The Arbitrator found that "CSI and its outside accountants properly recognized the $489,792 in dispute prior to the acquisition of it by FMC on April 30, 2012," and, therefore, FMC's holdback payment deleting the $489,792 was not authorized under the SPA. Dkt. 1-4 at 9-10. Accordingly, the Arbitrator awarded Plaintiff $489,792, plus pre-award interest in the amount of $161,950, as well as $354,732.86 in attorneys' fees and costs and $18,000 in arbitrator fees. *Id.* at 12.

On March 11, 2020, Plaintiff filed this Application to Confirm the Arbitration Award, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. In response, Defendants once again argue that the Arbitrator lacked jurisdiction under the SPA to rule on the working capital dispute between the parties because Section 1.4(g) of the SPA requires such disputes to be submitted to an independent accountant, not an arbitrator. Accordingly, Defendants argue that the Arbitration Award should be vacated under 9 U.S.C. § 10(a) because the Arbitrator exceeded his powers under the SPA.

## II.    Legal Standards

The FAA reflects a national policy favoring arbitration. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). "In light of the strong federal policy favoring arbitration, judicial review of an arbitration award is extraordinarily narrow." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471-72 (5th Cir. 2012). "Under the FAA, courts may vacate an arbitrator's

decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013). Thus, district courts "must" confirm an award unless the award is vacated under Section 10 or modified or corrected under Section 11 of the FAA. *Hall St. Assocs., L.L.C.*, 552 U.S. at 582. Section 10(a) provides that an award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators;
>
> (3) where the arbitrators were guilty of misconduct . . . or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Section 10(a) provides the exclusive grounds for vacatur of an arbitration award. *Cooper v. Westend Capital Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016). Therefore, courts cannot vacate an award for a "mere mistake of fact or law," *Rain CII Carbon*, 674 F.3d at 472, and have "no business weighing the merits of the grievance" or "considering whether there is equity in a particular claim." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987) (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."). The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it. *Cooper*, 832 F.3d at 544.

### III.     Analysis

Defendants argue that the Arbitration Award should be vacated under 9 U.S.C. § 10(a) because the Arbitrator exceeded his powers under the SPA. As the Supreme Court has explained, a party seeking relief under Section 10(a)(4) bears "a heavy burden:"

> It is not enough to show that the arbitrator committed an error—or even a serious error. Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits. Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination. So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

*Oxford Health Plans*, 569 U.S. at 569 (cleaned up).[2] In other words, "an arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties—the 'essence' of the contract." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802-03 (5th Cir. 2013). "[I]f there is ambiguity as to whether an arbitrator is acting within the scope of his authority, that ambiguity must be resolved in favor of the arbitrator." *Am. Eagle Airlines, Inc. v. Airline Pilots Ass'n*, 343 F.3d 401, 405 (5th Cir. 2003).

Defendants argue that the Arbitration Award should be vacated under Section 10(a)(4) of the FAA because the Arbitrator exceeded his powers under the SPA by ruling on the working capital dispute, which they contend should have been submitted to an independent accountant, pursuant

---

[2] S*ee also United Steelworkers*, 363 U.S. at 599 ("[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); *Delek Ref., Ltd. v. Local 202*, 891 F.3d 566, 570 (5th Cir. 2018) ("This deference means that even if we believe the arbitrator seriously erred in his fact finding or contract interpretation, we will uphold a decision that is rationally inferable from the purpose of the CBA.").

to Section 1.4(g) of the SPA. In essence, Defendants argue that the Arbitrator mistakenly determined that he had the authority to determine arbitrability, that is, whether the Plaintiff's claims were within the parties' agreement to arbitrate.

"The arbitrability of disputes—in other words, the determination of whether the agreement applies to the parties' claims—is generally a gateway issue to be determined by the courts. This issue, however, is deferred to arbitration where the agreement espouses the parties['] intent to do so." *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 195 (5th Cir. 2016); *accord Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (stating that the question of arbitrability is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise") (citation omitted).

Here, the parties expressly incorporated into their Agreement the Center for Public Resources Institute for Dispute Resolutions Arbitration Rules ("CPR Rules"). *See* Dkt. 1-1 at 8.11(a) (providing that "such arbitration shall be administered by the Center for Public Resources Institute for Dispute Resolutions ('CPR') in accordance with its then prevailing Rules for Non-Administered Arbitration of Business Disputes . . . ."). Rule 8.1 of the CPR Rules provides that:

> The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. This authority extends to jurisdictional challenges with respect to both the subject matter of the dispute and the parties to the arbitration.[3]

The Court finds that the parties' "express incorporation of the CPR Rules establishes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Hurley v. Emigrant Bank*, No. 3:19-CV-0011-B, 2019 WL 5537330, at *9 (N.D. Tex. Oct. 25, 2019) (holding that the parties'

---

[3] Pursuant to FED. R. EVID. 201, the Court takes judicial notice of the CPR Rules on CPR's website at https://www.cpradr.org/resource-center/rules/arbitration/non-administered/2018-International-Non-Administered-Arbitration-Rules. *Cf. Wilson v. United Health Grp.*, 2012 WL 6088318, at *4 n.4 (E.D. Cal. Dec. 6, 2012) (taking judicial notice of AAA Rules "easily available through the AAA's website").

express incorporation of the same CPR Rule established that the parties agreed to arbitrate arbitrability) (relying on *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (holding that a virtually identical AAA Rule which was expressly incorporated into the parties' arbitration agreement demonstrated that the parties agreed to arbitrate arbitrability)); *see also Cooper*, 832 F.3d at 546 (holding that similar JAMS Rules provided clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); *TML Multistate Intergovernmental Emp. Benefits Pool v. HealthEdge Software, Inc.*, No. A-18-CV-211 RP, 2018 WL 3326839, at *3 (W.D. Tex. June 1, 2018) (same), *report and recommendation adopted*, 2018 WL 8619806 (W.D. Tex. Dec. 17, 2018). Because the parties expressly agreed to arbitrate arbitrability, the Arbitrator had the authority under the SAP to determine jurisdiction and arbitrability issues, including whether the working capital dispute fell within the general Arbitration Clause. *See Cooper*, 832 F.3d at 546 (holding that arbitrator did not exceed his powers in issuing arbitration award where arbitrator had authority to determine jurisdiction and arbitrability issues).

As noted above, the sole question for the Court under Section 10(a) is whether the Arbitrator "interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569. Here, the Arbitrator clearly interpreted the SPA in determining that he had jurisdiction under the general Arbitration Clause to rule on the dispute. In his Order denying Defendants' Motion to Dismiss, the Arbitrator thoroughly examined Sections 1.4 and 8.11 of the SPA, the parties' briefs, and the evidence before him, and determined that the dispute fell within the general Arbitration Clause, not the dispute resolution procedure established in Section 1.4(g). *See* Dkt. 7-5. Notably, the Arbitrator found that the Defendants "effectively bypassed the Deloitte resolution process in Section 1.4(g) for this working capital adjustment dispute by not seeking to

submit it to Deloitte at any point but rather skipping the step and concluding the process with its final Holdback payment." *Id.* at 2. The Arbitrator also found that Defendants had stated in their negotiations with Plaintiff that if an agreement could not be reached, they would submit the dispute to an "arbitrator," not follow the dispute resolution process under Section 1.4(g). *Id.* at 2-3. Thus, the Arbitrator clearly considered the parties' Agreement and determined that he had the authority to arbitrate the case.

While the Defendants argue that the Arbitrator was incorrect in his interpretation of the SPA, whether he was right or wrong is outside of this Court's jurisdiction under Section 10(a). As the Supreme Court has stated, "convincing a court of an arbitrator's error—even his grave error—is not enough:"

> So long as the arbitrator was arguably construing the contract a court may not correct his mistakes under § 10(a)(4). The potential for those mistakes is the price of agreeing to arbitration. As we have held before, we hold again: It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. The arbitrator's construction holds, however good, bad, or ugly.

*Oxford Health Plans*, 569 U.S. at 572 (cleaned up).

Defendants agreed with Plaintiff that an arbitrator should determine what the Agreement meant, including whether the parties' claims were arbitrable under the Agreement. The fact that the Arbitrator's interpretation of the SPA went against Defendants does not mean that they "get to rerun the matter in a court." *Id.* at 573. Defendants chose arbitration, and they "must now live with that choice." *Id.* Because the question for a court under Section 10(g) "is not whether the arbitrator construed the parties' contract correctly, but whether he construed it all," Defendants have failed to sustain their heavy burden under Section 10(a)(4) to show that the Arbitrator exceeded his powers. Accordingly, the Court must recommend that the Arbitration Award be confirmed.

10

### IV.    Order and Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendants' Motion to Vacate Arbitration Award (Dkt. 7). The Court **FURTHER RECOMMENDS** that the District Court **GRANT** Plaintiff's Application to Confirm the Final Arbitration Award (Dkt. 1) and enter Judgment in favor of Plaintiff consistent with the Final Arbitration Award.

It is **FURTHER ORDERED** that Defendants' Request for a Hearing (Dkt. 14) is **DENIED**.

The Court **FURTHER ORDERS** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

### V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 9, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE